**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

INTEGRIS RISK RETENTION GROUP,

                    Plaintiff,

      v.                                     1:23-cv-00989 (AMN/MJK)

CAPITAL REGION ORTHOPAEDICS
ASSOCIATES, PC, BONE & JOINT CENTER,
LLC d/b/a THE BONE & JOINT CENTER,
ROBERT A. CHENEY, ALEXANDER RICCIO,
RICHARD RADKO, and ELLEN RADKO,

                    Defendants.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **HURWITZ FINE P.C.** | **DAN D. KOHANE, ESQ.** |
| 1300 Liberty Building | |
| Buffalo, New York 14202 | |
| | |
| 1245 Farmington Avenue – #1198 | **LEE S. SIEGEL, ESQ.** |
| West Hartford, Connecticut 06107 | |
| *Attorneys for Plaintiff* | |
| **RUSKIN MOSCOU FALTISCHEK, P.C.** | **ROSS J. KARTEZ, ESQ.** |
| 1425 RXR Plaza, East Tower | **MICHAEL D. BROWN, ESQ.** |
| 15th Floor | **RACHEL MORGENSTERN, ESQ.** |
| Uniondale, New York 11556 | |
| *Attorneys for Defendants Capital Region* | |
| *Orthopaedics Associates, PC,* | |
| *Robert A. Cheney, and Alexander Riccio* | |
| | |
| *Attorneys for Defendant Bone & Joint Center,* | **MICHAEL D. BROWN, ESQ.** |
| *LLC d/b/a The Bone & Joint Center* | **RACHEL MORGENSTERN, ESQ.** |
| **POWERS & SANTOLA, LLP** | **JOHN K. POWERS, ESQ.** |
| 100 Great Oaks Boulevard – Suite 123 | **AMBER L. WRIGHT, ESQ.** |
| Albany, New York 12203 | |
| *Attorneys for Defendants Richard Radko* | |
| *and Ellen Radko* | |

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

On August 14, 2023, Plaintiff Integris Risk Retention Group ("Plaintiff") commenced this diversity action against Defendants Capital Region Orthopaedics Associates, PC ("Defendant Practice"), Robert A. Cheney, M.D., Alexander Riccio, M.D. (together, "Defendant Providers"), Bone & Joint Center, LLC d/b/a The Bone & Joint Center ("Defendant LLC" and, collectively with Defendant Practice and Defendant Providers, "State Court Defendants"); and Richard Radko ("State Court Plaintiff") and his wife Ellen Radko (together, the "State Court Plaintiffs"), seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 in connection with certain insurance policies issued by Plaintiff and implicated by State Court Plaintiffs' tort claims in New York State Supreme Court against, *inter alia*, State Court Defendants (the "Underlying Action").   Dkt. No. 1 ("Complaint").   Presently before the Court is State Court Defendants' motion to dismiss the Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure.   Dkt. No. 25 ("Motion"). State Court Plaintiffs did not support or oppose the Motion, Dkt. No. 26; Plaintiff filed papers in opposition, Dkt. No. 33, State Court Defendants filed reply papers in further support, Dkt. No. 35; and the Court also heard oral argument from the parties.   For the reasons set forth below, Plaintiff's claims are dismissed.

## II.      BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the Motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record,

*Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

**A.  The Parties**

Plaintiff is an insurance provider formed in Washington, D.C. and with its principal place of business in Connecticut.  Dkt. No. 1 at ¶¶ 16–17.  Plaintiff issued a New York Medical Entity Professional Liability Policy that provides certain coverage to, *inter alia*, Defendant Practice (the "Entity Policy").  *Id.* at ¶ 5.  Plaintiff also issued a New York Physicians & Surgeons Professional Liability Policy that provides certain coverage to, *inter alia*, Defendant Providers (the "Physicians & Surgeons Policy" and, together with the Entity Policy, the "Policies").  *Id.* at ¶¶ 6, 12.

Defendant Practice is a New York professional corporation with its principal place of business in Albany, New York.  *Id.* at ¶ 18; Dkt. No. 1-4 at 2;[1] Dkt. No. 41-1 at ¶ 2.  Defendant Practice's shareholders are all physicians and New York citizens.  Dkt. No. 41-1 at ¶ 3.

Defendant Practice and Defendant LLC are alleged to have the same principal place of business and to conduct business from there as The Bone & Joint Center.  Dkt. No. 1 at ¶¶ 1, 20, 28, 80, 82; Dkt. No. 1-1 at ¶ 5.  Defendant LLC is a New York limited liability company.  *Id.* at ¶ 20.  Defendant LLC's sole member is Defendant Practice.  Dkt. No. 41-1 at ¶ 2.

Defendant Providers are orthopedic physicians affiliated with Defendant Practice "and/or" Defendant LLC.[2]  Dkt. No. 1 at ¶¶ 22, 24.  Defendant Providers are also New York citizens.  *Id.*; Dkt. No. 41-1 at ¶ 3.

At all relevant times, State Court Plaintiffs were husband and wife and New York citizens.  Dkt. No. 1 at ¶¶ 25–26; Dkt. No. 1-1 at ¶¶ 1–3.

---

[1] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

[2] The website for The Bone & Joint Center lists Defendant Providers.  THE BONE & JOINT CTR., https://www.theboneandjointcenter.com/doctors (lasted visited September 30, 2024).

### B.  Medical Incident

In April 2022, Dr. Cheney performed back surgery on State Court Plaintiff at the address shared by Defendant Practice and Defendant LLC.  Dkt. No. 1 at ¶¶ 28, 80.  In June 2022, State Court Plaintiff experienced various health problems.  *Id.* at ¶ 29.  He was initially evaluated by Dr. Riccio at The Bone & Joint Center and, the next day, went to a local hospital in Albany.  *Id.* at ¶¶ 29–30, 34.  Dr. Riccio and Dr. Cheney provided medical care to State Court Plaintiff at the hospital, as did numerous other medical providers.  *Id.* at ¶¶ 35–37; Dkt. No. 1-1 at ¶ 52.  State Court Plaintiff became paralyzed from the waist down while at the hospital, and recently passed away.  Dkt. No. 1 at ¶¶ 36, 38, 41; Dkt. No. 44; *see also* Fed. R. Civ. P. 25(a)(1).

### C.  Underlying Action

In March 2023, State Court Plaintiffs commenced an action in New York State Supreme Court, Albany County, alleging state law tort claims for medical malpractice and loss of consortium against Defendant Providers, Defendant LLC,[3] and six non-parties here.  Dkt. No. 1 at ¶ 1; Dkt. No. 1-1; *see also Richard C. Radko et al. v. Bone & Joint, LLC d/b/a The Bone & Joint Center et al.*, Index No. 902605-23, N.Y. Sup. Ct. Albany Cnty.

In October 2023, State Court Plaintiffs commenced a related action in New York State Supreme Court, Albany County, against Defendant Practice, "to protect their interests given the allegations as set forth in Plaintiff's Complaint seeking declaratory relief, implying that the wrong entity had been named, i.e., The Bone and Joint Center, in the first action."  Dkt. No. 26 at ¶¶ 6–7; Dkt. No. 25-1 at 13 n.5; *see also Richard C. Radko et al. v. Capital Region Orthopaedics Assocs., PC*, Index No. 909241-23, N.Y. Sup. Ct. Albany Cnty.   This second action was

---

[3] The parties agreed in their written submission, Dkt. No. 41, and at oral argument that Defendant LLC is the same entity as the defendant LLC in the Underlying Action.  Dkt. No. 41-1 at ¶¶ 1–2.

subsequently consolidated with the Underlying Action.  *See Radko et al.*, Index No. 902605-23, Dkt. No. 42.

In June 2024, State Court Plaintiffs commenced another related action in New York State Supreme Court, Albany County, against three additional non-parties.  *See Richard C. Radko et al. v Albany Med Ctr. et al.*, Index No. 905311-24, N.Y. Sup. Ct. Albany Cnty.  This third action was also subsequently consolidated with the Underlying Action.  *See Radko et al.*, Index No. 902605-23, Dkt. No. 46.[4]

As relevant here, the essence of State Court Plaintiffs' tort claims is that the State Court Defendants and numerous non-parties failed to timely diagnose and treat complications arising from State Court Plaintiff's back surgery, and their collective failure caused him, and his spouse, severe injury.  Dkt. No. 1 at ¶¶ 3–4, 40–41; Dkt. No. 1-1.

Subject to a reservation of rights, Plaintiff has been providing a defense under the Policies to State Court Defendants in the Underlying Action.  Dkt. No. 1 at ¶¶ 60, 66, 83; Dkt. No. 33 at 23; Dkt. No. 41 at 7.

**D.  Insurance Applications**

On or about September 28, 2022, Defendant Practice and Defendant Providers each submitted two-page form insurance applications to Plaintiff (each, an "Application").  Dkt. No. 1 at ¶¶ 44, 53; Dkt. Nos. 1-2, 1-3.

In Section I of its Application (entitled "General Applicant Information"), Defendant Practice provided certain information (e.g., name, practice address, mailing address, etc.),

---

[4] Following State Court Plaintiff's passing, the Underlying Action has been stayed pending appointment of an estate representative.  *Id.* at Dkt. Nos. 52–53.

including contact information for its administrator.[5]  Dkt. No. 1-2 at 2.

The instructions for Section II of the Applications (entitled "Claims Information") state: "Please note that the use of **claim** or **suit** in this application is defined as any demand for damages, resolved or pending, regardless of the result, arising from your professional activity and brought against you or any professional corporation.  For any "yes" responses, please attach a separate explanation."  Dkt. No. 1-2 at 2; Dkt. No. 1-3 at 2, 4 (emphasis in original).  In Section II of its Application, Defendant Practice provided "yes" responses to numerous questions, including all of the following:

(1) Are you or have you been involved in a malpractice claim or suit, either directly or indirectly?  If **yes**, please indicate the total number of claims and suits:  <u>44</u>.

(2) Have all claims and suits been reported to your current or prior professional liability insurer?  If **no**, please attach an explanation.

(3) Are you aware of any of the following circumstances regarding medical care you provided:

   a. A letter or request for records from a patient or a patient's attorney or representative related to an adverse outcome from care you provided to a patient?

   b. A statement by or letter from a patient's representative expressing dissatisfaction or questioning the quality or timeliness of any care you provided to a patient?

   c. A statement by or letter from a patient or patient's representative claiming a failure to provide care on your part or failure to diagnose[?]

---

[5] The Entity Policy states that "[t]he **Named Insured** must designate a policy administrator in the Application for this policy. . . . The policy administrator shall be the agent of all **Insureds** for: paying premiums; requesting changes to; or cancellation of, this policy; and receiving any payments due from the Company to any **Insured**."  Dkt. No. 1-4 at 108 (emphasis in original). Defendant Practice's Application provided an email address for the administrator with the domain "caportho.com."  Dkt. No. 1-2 at 2.  The website for that domain leads to a welcome page for "The Bone & Joint Center."  THE BONE & JOINT CTR., www.caportho.com (last visited Sept. 30, 2024). As noted earlier, Plaintiff alleges that it was made aware during the underwriting process that Defendant Practice "does business as The Bone & Joint Center."  Dkt. No. 1 at ¶ 82.

    d.  Intra- or post-procedural complications or other treatment complications resulting in death, paralysis, loss of body part bodily function, disability, re-operation or extended hospitalization or other morbidity?

    e.  Any death (expected or otherwise), neurological, sensory, or systematic deficits of a patient including but not limited to brain damage, permanent paralysis, loss of sight or hearing, loss of limb, or other morbidity from care you provided whether or not you believe that medical standards of care were met?

    . . .

    g.  Has a patient, patient's representative or representative filed any complaint or grievance to any healthcare institution, institution at which you practice and/or managed care organization of which you are a member, regarding care you provided to a patient?

    h.  Has a patient, patient's representative or any healthcare institution filed any governmental report (including Department of Public Health, and other state or federal agency) or grievance regarding care you provided to a patient?

    i.  Has your care ever been subject of a peer review, sentinel event report or other investigation by any healthcare institution?

    j.  Are you aware of any expression of dissatisfaction with the outcome of a procedure, treatment or diagnosis performed [o]r made by you whether from a patient or a patient's family or representative?

    k.  Have all circumstances that might reasonably lead to a medical incident report, claim or suit (EVEN IF YOU BELIEVE THE POSSIBLE CLAIM OR SUIT WOULD BE WITHOUT MERIT) been reported to your current or prior professional [l]iability carrier?

Dkt. No. 1-2 at 2 (emphasis in original).  Instead of a "separate explanation" for each of its "yes" responses, Defendant Practice provided the following brief narrative at the end of its Application:

Capital Region Orthopaedic[s] Associates take[s] pride in providing quality orthopedic care to our patients.  We take patient, patient attorney or representative and payer communications seriously.  These communications are reviewed and any circumstances that might reasonably lead to a medical incident report, claim or suit have been reported to our current or prior professional liability carrier.

We are a large orthopaedic group that has privileges in a level one trauma center. Our providers see over 190,000 patients per year and often treat complex cases and

patients with multiple comorbidities.  Any complications related to care, i.e.[,] post op infection, have been minimal and any circumstance(s) that might reasonably lead to a medical incident report, claim or suit have been reported to our current or prior professional liability carrier.

To ensure we maintain our high level of service to our patients, we maintain quality assurance committees at both of our surgery centers and actively participate in the quality assurance committees at Albany Medical Health System in the form of the morbidity and mortality conferences.

*Id.* at 3; Dkt. No. 1 at ¶ 50.

In Section III of its Application, Defendant Practice declared, *inter alia*, "that all statements and answers herein are full, complete, and true to the best of [its] knowledge and belief."  Dkt. No. 1-2 at 3.

In Section II of their Applications, Defendant Providers also provided "yes" responses to the same Question 2 and ten subparts of Question 3 excerpted above.[6]  Dkt. No. 1-3 at 2, 4.  In Section III of their Applications, Defendant Providers also initialed their agreement to identical declaration language as that excerpted above.  *Id.*  Defendant Providers provided no "separate explanation" for any of their "yes" responses.  Dkt. No. 1-3.

After receiving the Applications, Plaintiff issued the Entity Policy and Physicians & Surgeons Policy, both with effective dates of October 1, 2022 to October 1, 2023.  Dkt. No. 1 at ¶¶ 60, 65; Dkt. No. 1-4.  In connection with issuing the Policies, Plaintiff does not allege that it requested any of the missing explanations or conducted any investigation regarding the incomplete information provided by Defendant Practice or Defendant Providers on their Applications.  *See, e.g.,* Dkt. No. 1 at ¶¶ 51, 59, 98–103, 111–116.

---

[6] In response to Question 1, regarding involvement in a malpractice claim or suit, Defendant Providers both provided "no" responses.  Dkt. No. 1-3 at 2, 4.

### E.  Insurance Policies

The Entity Policy, Dkt. No. 1-4 at 96–110, is a claims made policy that, as relevant here, provides the following:

> A. Payment of Claims
>
> The Company will pay on behalf of the **Named Insured**, up to the applicable limits of liability (see Section I, Part 2) stated on the Declarations Page, and subject to all of the terms, exclusions, limitations and conditions stated in this policy, sums the **Named Insured** becomes legally obligated to pay as **Damages** for a **Claim**, but only if all of the following conditions are met:
>
> > 1. the **Claim** is first reported to the Company during the **Policy Period** or any applicable extended reporting period (see Section I, Part 6); and,
> >
> > 2. the **Claim** arises out of a **Medical Incident** in the **Territory** on or after the **Retroactive Date** and before the end of the **Policy Period**.
>
> Subject to the provisions of PART 2. Limits of Liability, this coverage also applies to damages for which an employee of the **Named Insured** may be held legally responsible as a result of a **Medical Incident** by such employee acting in the course and scope of his employment by the **Named Insured**, provided however, this coverage does not apply to a **Scheduled Insured**.
>
> B. Defense
>
> The Company has the exclusive right and the obligation to defend the **Insured** including any individual covered under PART I, A. against any **Claim** that the Company may be obligated to pay on behalf of the **Insured**, and the cost of defense will not be subject to the limits of liability stated on the Declarations Page. The Company will defend the **Insured** even if the **Claim** is groundless, false or fraudulent. The Company shall have the right to appoint counsel and to make such investigation and defense of such **Claim** as it deems necessary. If a **Claim** becomes subject to mediation or arbitration, the Company shall have the right to exercise all rights of the **Insured** in the selection of arbitrators or mediators and the conduct of such mediation or arbitration.
>
> Subject to Section I, Part 4, the Company shall have the right to make such settlement of such **Claim** as it deems expedient. The Company shall not be obligated to pay any **Claim** or judgment or to defend any **Claim** after the applicable limit of the Company's liability has been exhausted by payment of settlements or judgments.

Dkt. No. 1-4 at 99 (emphasis in original); *see also* Dkt. No. 1 at ¶¶ 61.

9

The Entity Policy also provides the following definitions:

B.  **Claim** means a written notice, demand, cross **Claim**, or lawsuit (including an arbitration proceeding), first reported to the Company during the **Policy Period** or any extended reporting period (see Section I, Part 6), which alleges injury or death to a person arising out of a **Medical Incident**.  All **Claims** arising out of the same **Medical Incident** or any **Related Medical Incident**, whenever made, shall be considered first made during the **Policy Period** in which the earliest **Claim** was made and all such **Claims** shall be subject to the same limits of liability.  A **Claim** will be deemed to have been reported to the Company during the **Policy Period** if, during the **Policy Period**, an **Insured**, injured party or other claimant under this policy gives written notice to the Company of the facts and circumstances giving rise to the **Claim** together with the identity of the patient (see Section II, Part 1).

C.  **Damages** means all monetary sums which the **Named Insured** becomes legally obligated to pay as **Damages** as the result of a **Claim** or suit including judgments, awards and settlements entered into with the Company's prior written consent. **Damages** do not include any fines, penalties, taxes, punitive, exemplary, or multiplied **Damages**.

D.  **Insured** means the **Named Insured** and any employee of the **Named Insured** for whom the **Named Insured** is legally responsible as defined in Section I, PART I, Paragraph A.

E.  **Medical Incident** means any act or omission in the furnishing of **Professional Services**.  Any **Medical Incident** together with all **Related Medical Incidents** shall be considered one **Medical Incident**.

F.  **Named Insured** means the **Professional Entity** identified as such on the Declarations Page.

. . .

K.  **Retroactive Date** means the date identified as such on the Declarations Page.

L.  **Scheduled Insured** means a natural person listed as an **Insured** on the Schedule of insured medical providers on this policy's Declarations Page.

Dkt. No. 1-4 at 105 (emphasis in original); *see also* Dkt. No. 1 at ¶¶ 62.  The Retroactive Date is

listed as July 1, 2006[7] on the "Common Policy Declarations" and within the attached "Named

---

[7] One of the Policy endorsements, titled "Notice Required for New York Insurance Law," states that "[t]his policy does not provide coverage for claims arising out of incidents, occurrences or

Insured Coverages."  Dkt. No. 1-4 at 3, 5.

The Physicians & Surgeons Policy, Dkt. No. 1-4 at 111–125, is a claims made policy[8] that, as relevant here, provides the following:

A. Payment of Claims

The Company will pay on behalf of the **Insured**, up to the applicable limits of liability (see Section I, Part 2) stated on the Declarations Page, and subject to all of the terms, exclusions, limitations and conditions stated in this policy, sums the **Insured** becomes legally obligated to pay as **Damages** for a **Claim**, but only if all of the following conditions are met:

1. the **Claim** is first reported to the Company during the **Policy Period** or any applicable extended reporting period (see Section I, Part 7); and,

2. the **Claim** arises out of a **Medical Incident** in the **Territory** on or after the **Retroactive Date** and before the end of the **Policy Period**.

B. Defense

The Company has the exclusive right and the obligation to defend the **Insured** against any **Claim** that the Company may be obligated to pay on behalf of the **Insured**, and the cost of defense will not be subject to the limits of liability stated on the Declarations Page.  The Company will defend the **Insured** even if the **Claim** is groundless, false or fraudulent.  The Company shall have the right to appoint counsel and to make such investigation and defense of such **Claim** as it deems necessary.  If a **Claim** becomes subject to mediation or arbitration, the Company shall have the right to exercise all rights of the **Insured** in the selection of arbitrators or mediators and the conduct of such mediation or arbitration.

Subject to Section I, Part 4, the Company shall have the right to make such settlement of such **Claim** as it deems expedient.  The Company shall not be obligated to pay any **Claim** or judgment or to defend any **Claim** after the applicable limit of the Company's liability has been exhausted by payment of settlements or judgments.

---

alleged wrongful acts which took place prior to the retroactive date stated on the declarations page."  Dkt. No. 1-4 at 75.

[8] Plaintiff also issued an occurrence-based New York Physicians & Surgeons Professional Liability Insurance Policy, Dkt. No. 1-4 at 126–138, which the parties have not argued is relevant to resolution of the Motion.  *See, e.g., St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 535 n.3 (1978) ("An 'occurrence' policy protects the policyholder from liability from any act done while the policy is in effect, whereas a 'claims made' policy protects the holder only against claims made during the life of the policy.").

Dkt. No. 1-4 at 114 (emphasis in original); *see also* Dkt. No. 1 at ¶ 67.

The Physicians & Surgeons Policy provides the following definitions:

B.   **Claim** means a written notice, demand, cross **Claim**, or lawsuit (including an arbitration proceeding), first reported to the Company during the **Policy Period** or any extended reporting period (see Section I, Part 7), which alleges injury or death to a person arising out of a **Medical Incident**.  All **Claims** arising out of the same **Medical Incident** or any **Related Medical Incident**, whenever made, shall be considered first made during the **Policy Period** in which the earliest **Claim** was made and all such **Claims** shall be subject to the same limits of liability.  A **Claim** will be deemed to have been reported to the Company during the **Policy Period** if, during the **Policy Period**, an **Insured**, injured party or other claimant under this policy gives written notice to the Company of the facts and circumstances giving rise to the **Claim** together with the identity of the patient (see Section II, Part 1A).

C.   **Damages** means all monetary sums which the **Insured** becomes legally obligated to pay as **Damages** as the result of a **Claim** or suit including judgments, awards and settlements entered into with the Company's prior written consent.  **Damages** do not include any fines, penalties, taxes, punitive, exemplary, or multiplied **Damages**.

D.   **Insured** means a natural person listed on the policy's Schedule of insured medical providers or a temporary substitute medical provider who is identified on an endorsement to this policy after filing an **Application** with the Company for coverage as a temporary substitute medical provider for such an **Insured**.

E.   **Medical Incident** means any act or omission in the furnishing of Professional Services.  Any **Medical Incident** together with all **Related Medical Incidents** shall be considered one **Medical Incident**.

F.   **Named Insured** means the **Professional Entity** identified as such on the Declarations Page.

. . .

K.   **Retroactive Date** means the date identified as such on the Declarations Page.

Dkt. No. 1-4 at 120–21 (emphasis in original); *see also* Dkt. No. 1 at ¶ 68.  On the "Schedule of Insureds" within the "Common Policy Declarations," the Retroactive Date is July 8, 1996 for Dr. Cheney and August 19, 2019 for Dr. Riccio.  Dkt. No. 1-4 at 1, 6, 10.

The Entity Policy and the Physicians & Surgeons Policy both contain various exclusions.

As relevant here, each Policy states that it "does NOT COVER **Damages**" that "are punitive or exemplary in nature" ("Exclusion 3.J") or that "[a]ris[e] out of a **Claim** made or brought against the **Insured** that the **Insured** knew or reasonably should have known about prior to the effective date of this policy" ("Exclusion 3.O"). *Id.* at 100, 115–16 (emphasis in original); *see also* Dkt. No. 1 at ¶¶ 64, 70.

### F.  Plaintiff's Allegations

The Complaint sets forth four alternative grounds for a declaratory judgment against State Court Defendants.[9]  Dkt. No. 1 at ¶¶ 88, 90, 103, 105, 116, 118, 124.  Count One seeks a declaration that Plaintiff has no obligation under the Entity Policy to defend or indemnify "any party or entity seeking coverage" in the Underlying Action, because Defendant Practice is not a defendant therein. *Id.* at ¶¶ 74–88.

Count Two alternatively seeks a declaration rescinding the Entity Policy because Defendant Practice purportedly made misrepresentations in Section II of its Application by not providing information related to, *inter alia*, State Court Plaintiff's "adverse outcome."  *Id.* at ¶¶ 89–103.  In particular, Plaintiff alleges that the brief narrative Defendant Practice included with its Application did not constitute a sufficient explanation of incidents that had been reported to Defendant Practice's prior liability insurer. *Id.* at ¶ 96.  Plaintiff claims that had Defendant Practice provided more information regarding State Court Plaintiff's "adverse outcome," Plaintiff "would have had an opportunity to evaluate the circumstances involving this incident before the Entity Policy was issued" and would have priced the Entity Policy differently to account for the alleged additional risk.  *Id.* at ¶¶ 98–100, 102.  Because of Defendant Practice's purported

---

[9] The Complaint seeks "no specific relief" against State Court Plaintiffs, and instead joins them as necessary parties "solely for [them] to be bound by the judgment rendered in this cause."  Dkt. No. 1 at ¶¶ 25–26.

misrepresentations, Plaintiff seeks a declaration rescinding the Entity Policy and clarifying that Plaintiff has no obligation to defend or indemnify Defendant LLC, "or any other entity seeking coverage under the Entity Policy," in the Underlying Action.  *Id.* at ¶ 103.

Count Three alternatively seeks a declaration rescinding the Physicians & Surgeons Policy because of similar alleged misrepresentations on the Applications from Defendant Providers.  *Id.* at ¶¶ 104–16.  Plaintiff likewise alleges that but for these alleged misrepresentations, it would have conducted an evaluation and priced the Physicians & Surgeons Policy differently.  *Id.* at ¶¶ 111–13, 115.  As a result, Plaintiff seeks a declaration clarifying that Plaintiff has no duty to defend or indemnify Defendant Providers in the Underlying Action.[10]  *Id.* at ¶ 116.

Count Four, again alternatively, requests a declaration that coverage under either Policy is unavailable due to Exclusion 3.O, which purportedly operates to eliminate coverage for Claims arising from "facts and circumstances" that were known prior to October 1, 2022, the effective date of each Policy.  *Id.* at ¶¶ 117–124.

### G.  The Instant Action and Motion

Plaintiff commenced this action on August 14, 2023.  Dkt. No. 1.  State Court Plaintiffs answered on September 20, 2023, largely denying various allegations in the Complaint.  Dkt. No. 8.  Following several stipulated extensions of time to respond, State Court Defendants filed the Motion on November 13, 2023 and requested oral argument.  Dkt. Nos. 5–6, 13, 15, 21, 23; Dkt. No. 25.  State Court Plaintiffs submitted a responsive affirmation in which they took no position on the Motion on December 4, 2023.  Dkt. No. 26.  Plaintiff opposed the Motion on December 29, 2023.  Dkt. No. 33.  State Court Defendants filed reply papers in further support on January 30,

---

[10] As part of the requested declarations based on rescission, Plaintiff also alleges that each Policy should be declared void *ab initio* due to the alleged misrepresentations on the relevant Applications.  *Id.* at ¶¶ 13, 103, 116.

2024 and again requested oral argument.  Dkt. Nos. 35–36.

On July 22, 2024, the Court granted State Court Defendants' request for oral argument. Dkt. No. 37.  On July 29, 2024, the Court directed the parties to submit supplemental papers addressing (i) "subject matter jurisdiction, including the citizenship of Defendant Bone & Joint Center, LLC's members," and (ii) "the applicability of the abstention doctrine established in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)."  Dkt. No. 40 (additional citations omitted).

On August 14, 2024, Plaintiff and State Court Defendants made a joint submission asserting that the Court has subject matter jurisdiction over this matter and arguing that *Wilton* abstention is not appropriate.  Dkt. No. 41.  State Court Plaintiffs did not join or make any submission.  *See generally* Docket Sheet.

On August 27, 2024, the Court heard oral argument from State Court Defendants, Plaintiff, and State Court Plaintiffs.  Accordingly, the issues are fully submitted for the Court's decision.

## III.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  This presumption, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted).  Under this standard, a pleading's "[f]actual allegations must be enough to raise a right

to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

## IV.     DISCUSSION

### A.  Subject Matter Jurisdiction

Before reaching the substance of the Motion, the Court addresses the threshold issue of its jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed.") (citations omitted).

### 1.  Diversity Jurisdiction

"It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006). Here, Plaintiff asserts diversity jurisdiction[11] and alleges that Defendants are all New York citizens. *See*

---

[11] For present purposes, the Court considers the amount in controversy requirement to be satisfied. *See* Dkt. No. 1 at ¶ 14; 28 U.S.C. § 1332(a).

Section II.A, *supra*.  However, Plaintiff failed to allege the identify or citizenship of each of Defendant LLC's members.  *See generally* Dkt. No. 1; *see also Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 60 (2d Cir. 2016) ("In general, the citizenship of a limited liability company is determined by the citizenship of each of its members. . . . If the usual rule is applicable here, the Complaint is deficient because it contains no allegation as to the identify or citizenship of [defendant LLC]'s members.") (citations omitted).

Given this potential jurisdictional deficiency in the Complaint, the Court requested that the parties address the issue.  Dkt. No. 40.  The resulting joint submission from Plaintiff and State Court Defendants claims that a supporting declaration establishes "that the Defendants are all citizens of New York State, while Plaintiff is not a citizen of New York, thus satisfying diversity in this action."  Dkt. No. 41 at 4.  The supporting declaration[12] indicates that, as detailed earlier, Defendant LLC's sole member is Defendant Practice, and Defendant Practice's members are all physicians who are citizens of New York.  Dkt. No. 41-1 at ¶¶ 1–3; *see also* Section II.A, *supra*.

Accordingly, and consistent with Plaintiff and State Court Defendants' joint position, the Court finds that the requirements for diversity jurisdiction are satisfied.

### 2. Justiciability

The Court's request for supplemental briefing also directed the parties to address, *inter alia*, *Admiral Insurance Company v. Niagara Transformer Corporation*, 57 F.4th 85 (2d Cir. 2023).  Dkt. No. 40.  Plaintiff and State Court Defendants assert in their joint submission that

---

[12] No party has objected to this declaration, which was included in a joint submission from Plaintiff and State Court Defendants.  Nonetheless, the Court has only considered the declaration to the extent necessary to address subject matter jurisdiction.  *See, e.g., Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (stating that a district court "may refer to evidence outside the pleadings" when determining whether to dismiss for lack of subject matter jurisdiction); *Berardi v. Berardi*, No. 22-cv-159, 2023 WL 1795797, at *4 n.4 (N.D.N.Y. Feb. 7, 2023) (similar).

"[t]he facts in *Admiral* are also not applicable, since it involves dismissing the federal action due to there being a 'lack of a justiciable case of actual controversy' since the underlying action was not yet commenced." Dkt. No. 41 at 7 n.2 (citing *Admiral Ins.*, 57 F.4th at 89, 101).

The Court finds that the factual contours of *Admiral Insurance* are at least partially applicable to this case.  Admiral Insurance sought a declaratory judgment that it did not need to defend or indemnify its historical insured in potential litigation between the insured and certain non-parties. 57 F.4th at 89.  The district court dismissed the entire action on justiciability grounds, reasoning that the insurer's duty to defend was not implicated in the absence of litigation, while the insurer's duty to indemnify was not implicated because the non-parties were unlikely to prevail on their potential claims against the insured.  *Id.*  The Second Circuit affirmed the district court's dismissal of the duty to indemnify, but remanded regarding the duty to defend for an assessment of "whether there exists a practical likelihood" that the non-parties would commence suit against the insured.  *Id.*

In general, "[t]he standard for ripeness in a declaratory judgment action is that there is substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 86 (2d Cir. 2023) (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005)); *see also Stoncor Grp., Inc. v. Peerless Ins. Co.*, 322 F. Supp. 3d 505, 512 (S.D.N.Y. 2018) ("It is settled that '[e]ven in diversity actions, . . . federal law controls the justiciability of declaratory judgment actions.'") (alterations in original) (citations omitted). Particularly in the context of insurance coverage disputes, however, "[t]hat the liability may be contingent does not necessarily defeat jurisdiction of a declaratory[-]judgment action. Rather, courts should focus on the *practical likelihood* that the [relevant] contingencies will occur."

*Admiral Ins.*, 57 F.4th at 92 (alterations in original) (additional citations omitted) (quoting *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 278 (2d Cir 2008)).  As the Second Circuit has made clear:

> Because "the duty to defend is triggered by the filing of a lawsuit while the duty to indemnify is triggered by a determination of liability," a district court's jurisdiction to declare an insurer's duty to defend and its duty to indemnify turn on different inquiries – each involving the practical likelihood that the triggering event will occur. . . . With respect to the duty to defend, the district court must find a practical likelihood that a third party will *commence* litigation against the insured.  With respect to the duty to indemnify, the court must find a practical likelihood that the third party will *prevail* in such litigation.  Accordingly, a district court "may" well have jurisdiction to "issue a declaratory judgment on [an insurer's] duty to defend," even "while holding that the duty to indemnify is not ripe for adjudication."

*Admiral Ins.*, 57 F.4th at 93 (alterations in original) (citations omitted).

Here, Plaintiff's duty to defend has been triggered, at least with respect to State Court Defendants.  State Court Plaintiffs have sued State Court Defendants in the Underlying Action. *See* Dkt. No. 1 at ¶ 1; Dkt. No. 1-1; *Radko et al.*, Index No. 902605-23, Dkt. Nos. 1, 42.  Further, Plaintiff has been providing a defense, subject to a reservation of rights, to State Court Defendants in the Underlying Action.  Dkt. No. 1 at ¶¶ 60, 66, 83; Dkt. No. 33 at 23; Dkt. No. 41 at 7.

In contrast, the Court finds that Plaintiff's duty to indemnify is not yet ripe.  As an initial matter, there has been no determination of liability in the Underlying Action, which appears to be only in the early stages of discovery and is presently stayed.  *See generally* Dkt. No. 1; *Radko et al.*, Index No. 902605-23, Dkt. Nos. 51, 53; *see also Town Plaza of Poughquag, LLC v. Hartford Ins. Co.*, 175 F. Supp. 3d 93, 100–01 (S.D.N.Y. 2016) ("Under New York law, an insurer's duty to indemnify is narrower and distinct from the duty to defend. . . . Courts considering whether an insurer has a duty to indemnify on actions for declaratory relief generally decline to rule on the issue of indemnity until liability is determined in the underlying personal injury action.") (citations omitted).  Additionally, the joint submission from Plaintiff and State Court Defendants states that

Plaintiff "has not committed to any indemnity" in the Underlying Action, further indicating this issue is not yet ripe.  Dkt. No. 41 at 8.

Most significant, however, is the current absence of "a practical likelihood" that State Court Plaintiffs will prevail on their claims in the Underlying Action against State Court Defendants. *Admiral Ins.*, 57 F.4th at 93.  This assessment is not intended to question the viability of State Court Plaintiffs' claims, nor the severity of the injuries alleged.[13]  It is instead a recognition that State Court Plaintiffs have brought medical malpractice claims under New York law against 13 defendants.  *See Radko et al.*, Index No. 902605-23, Dkt. Nos. 1, 42, 46.  A medical malpractice claim under New York law requires that a plaintiff establish "(1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused plaintiff's injuries." *Arkin v. Gittleson*, 32 F.3d 658, 664 (2d Cir. 1994) (citations omitted) (collecting cases).  Further, "[t]hese elements must be established by expert testimony, unless the testimony is within the ordinary knowledge and experience of the jury." *Vale v. United States*, 673 F. App'x 114, 116 (2d Cir. 2016) (citing *Milano by Milano v. Freed*, 64 F.3d 91, 95 (2d Cir. 1995)).

Presently before the Court are only four of these 13 defendants (i.e., State Court Defendants) and insufficient facts to assess among all defendants any breach; causation over an approximately two-month period; or the scope of any damages, the nature thereof, and the relative responsibility therefore.  On the current limited record, the Court cannot make a determination that there is "a practical likelihood" that State Court Plaintiffs will prevail on their claims against State Court Defendants.  *Admiral Ins.*, 57 F.4th at 93.  Accordingly, the Court finds that Plaintiff's duty

---

[13] The Court takes this opportunity to make clear that nothing in this Memorandum-Decision and Order reflects an opinion—let alone a finding—regarding the merits of the Underlying Action.

to indemnify is not yet ripe.[14]

### B. *Wilton* Abstention

The Court also requested that the parties address the applicability of *Wilton* abstention and directed them to particularly relevant portions of *Admiral Insurance*, 57 F.4th at 99–100, and *In re Estate of Grossman*, No. 21-3096, 2024 WL 371127, at *3 (2d Cir. Feb. 1, 2024) (summary order), to inform their positions.  Dkt. No. 40.  Plaintiff and State Court Defendants argued in their joint submission that *Wilton* and *Admiral Insurance* are distinguishable from the present case and did not provide an analysis of the factors set forth in *Admiral Insurance*, *see* Dkt. No. 41 at 6–7 & n.2, nor did they do so when asked during oral argument.  Instead, the joint submission sets forth a two-point argument for why *Wilton* abstention is not appropriate: (i) the Underlying Action does not and cannot address the coverage issues raised in this declaratory judgment action, *id.* at 6–8; and (ii) a stay or dismissal would prejudice the Underlying Action, frustrate settlement therein, be an inefficient use of judicial resources, and prejudice unnamed non-parties, *id.* at 8–10.

As discussed earlier, the Court finds the factual contours of *Admiral Insurance* instructive in this case.  *See* Section IV.A, *supra*.  Even if the facts were wholly inapplicable, however, the factors set forth by the Second Circuit in that decision regarding declaratory judgments generally remain fully applicable.  *See Admiral Ins.*, 57 F.4th at 96 ("[W]e write to clarify the legal standard that governs district courts' discretion to decline to issue declaratory judgments in 'case[s] of

---

[14] Additionally, the Court finds that Count One—which alleges that the absence of Defendant Practice from the Underlying Action relieves Plaintiff of any coverage obligations under the Entity Policy related to that action—is moot following State Court Plaintiffs' addition of Defendant Practice to the Underlying Action.  *See* Dkt. No. 26 at ¶¶ 6–7; Dkt. No. 1 at ¶¶ 77–79; *Radko et al.*, Index No. 902605-23, Dkt. No. 42; *see also Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 319 (2d Cir. 2020) ("If, as a result of changed circumstances, a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a court's Article III subject matter jurisdiction and must be dismissed for mootness.").

actual controversy' that are otherwise 'within [their] jurisdiction.'") (second and third alterations in original) (quoting 28 U.S.C. § 2201(a)); *id.* at 99–100 ("We further clarify that the following considerations, 'to the extent they are relevant' in a particular case . . . should inform a district court's exercise of such discretion: (1) 'whether the [declaratory] judgment [sought] will serve a useful purpose in clarifying or settling the legal issues involved'; (2) 'whether [such] a judgment would finalize the controversy and offer relief from uncertainty'; (3) 'whether the proposed remedy is being used merely for procedural fencing or a race to res judicata'; (4) 'whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court'; (5) 'whether there is a better or more effective remedy,' . . . and (6) whether concerns for 'judicial efficiency' and 'judicial economy' favor declining to exercise jurisdiction.") (alterations in original) (citations omitted).

### 1. *Admiral Insurance* Factors

As it relates to Plaintiff's duty to defend, given the existence of a justiciable controversy, the Court exercises its discretion to hear that claim. The Court applies the six *Admiral Insurance* factors to the unique facts of this case as follows.[15] First, a declaratory judgment would certainly serve a "useful purpose in clarifying or settling the legal issues involved," as Plaintiff is currently providing the State Court Defendants with a defense, subject to a reservation of rights. *Admiral Ins.*, 57 F.4th at 99; *see also* Dkt. No. 41 at 7, 9. Second, and for related reasons, a declaratory judgment would also "finalize the controversy and offer relief from uncertainty." *Admiral Ins.*, 57 F.4th at 100. Third, the Court finds that Plaintiff's "proposed remedy is [not] being used merely

---

[15] While Plaintiff and State Court Defendants did not analyze the *Admiral Insurance* factors in their joint submission, they did make argument concerning certain considerations identified in *Wilton*. *See* Dkt. No. 41 at 7–8 (quoting *Wilton*, 515 U.S. at 283). Those arguments are addressed, as relevant, in the Court's analysis below.

for procedural fencing," in part because State Court Plaintiffs have requested the stay of the Underlying Action. *Id.*; *see also Radko et al.*, Index No. 902605-23, Dkt. Nos. 51, 53. Fourth, the Court finds that the potential for "use of a declaratory judgment [to] increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court" is somewhat mitigated. *Admiral Ins.*, 57 F.4th at 100. The Court notes that counsel for Plaintiff and State Court Defendants agreed at oral argument that the instant litigation could be resolved within approximately one year from the date of this Memorandum-Decision and Order, and that the Underlying Action is presently stayed. Fifth, the Court finds that there is at least an equivalent remedy available in New York courts. *Id.*; *see also* N.Y. C.P.L.R. §§ 1010, 3001, 3017(b). Sixth, the Court finds that "concerns for 'judicial efficiency' and 'judicial economy'" weigh somewhat against exercising jurisdiction as to Plaintiff's duty to defend, *Admiral Ins.*, 57 F.4th at 100, given that three actions have already been commenced in New York State Supreme Court concerning State Court Plaintiffs' claims.

On balance, and given the unique facts of this case, the Court finds that *Wilton* abstention is not appropriate as it relates to Plaintiff's duty to defend. Accordingly, the Court exercises its jurisdiction over Plaintiff's duty to defend.[16]

---

[16] Even if the issue of Plaintiff's duty to indemnify was ripe, the Court would decline to exercise its discretion to hear such a claim at this time and find that a stay is warranted. *See id.* at 96 ("[T]he [Declaratory Judgment Act] provides only that federal courts '*may* declare the rights and other legal relations of an [ ] interested party seeking such declaration' in 'a case of actual controversy' – not that they *must* so declare.") (emphasis in original) (citing 28 U.S.C. § 2201(a)); *Drs. Pro. Liab. Risk Retention Grp., Inc. v. Burke*, No. 17-cv-527, 2017 WL 11318556, at *3 (N.D.N.Y. Oct. 31, 2017) ("[W]hen there are issues in the federal action that depend on the resolution of the state court action, consideration of whether the insurer has a duty to indemnify must wait until liability is determined in the underlying personal injury action.") (citations omitted); *Grossman*, 2024 WL 371127, at *3; *see also* Dkt. No. 41 at 6 ("A District Court has broad discretion to decline to exercise its jurisdiction over a case brought pursuant to the Declaratory Judgment Act.").

### C.  The Motion

Having determined to exercise its jurisdiction with respect to Plaintiff's duty to defend, the Court turns to the merits of the Motion.  The Motion raises various arguments in support of dismissal.  The Court agrees with the parties' assumption that New York substantive law applies in this diversity action, and addresses these arguments below.[17]  See Dkt. Nos. 25-1, 26,[18] 33, 35; *Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 394 n.5 (2d Cir. 2023) ("We apply New York state law to this case because the parties' briefs both assume New York state law governs and such 'implied consent is . . . sufficient to establish the applicable choice of law.'") (quoting *Trikona Advisors Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017)).

### 1.  Waiver

The Motion sets forth an argument, sometimes described as "inquiry notice," that because the responses on the Applications were incomplete, Plaintiff's failure to investigate or request additional information should alternatively bar rescission of the Policies.  Dkt. No. 25-1 at 17–18, 23–25; Dkt. No. 35 at 8–10.  Plaintiff responds that such arguments "underscore" the alleged misrepresentations on the Applications and are otherwise unsupported.  Dkt. No. 33 at 26–27.

While Plaintiff argues that Defendant Practice and Defendant Providers made misrepresentations, the gravamen of Counts Two and Three is that the Applications omitted certain information.  *See, e.g., id.* at ¶ 98 (alleging that had Defendant Practice's Application contained more "complete information regarding Mr. Radko's adverse outcome, [Plaintiff] would have had

---

[17]  The Court has considered, and denies, the portions of the Motion relating to policy considerations, *see Weiss v. Union Cent. Life Ins. Co.*, 28 F. App'x 87, 89–90 (2d Cir. 2002), and attorney's fees, *see U.S. Underwriters Ins. Co. v City Club Hotel, LLC*, 3 N.Y.3d 592, 597 (2004). *See also* Dkt. No. 25-1 at 26–27; Dkt. No. 33 at 28–29; Dkt. No. 35 at 14.

[18]  Because State Court Plaintiffs have taken no position on the Motion, their submission is not further addressed.  Dkt. No. 26 at ¶ 4; *see also* Dkt. No. 1 at ¶¶ 25–26.

an opportunity to evaluate the circumstances involving this incident before the Entity Policy was issued"); *id.* at ¶ 99 (alleging that Mr. Radko's adverse outcome was not "fully disclosed during to [sic] [Plaintiff] during the application process" by Defendant Practice); *id.* at ¶ 110 (alleging that "the facts and circumstances regarding Mr. Radko's adverse outcome were not previously reported or disclosed to [Plaintiff]" by Defendant Providers); *id.* at ¶ 111 (alleging that had Defendant Providers' Applications contained more "complete information regarding Mr. Radko's adverse outcome, [Plaintiff] would have had an opportunity to evaluate the circumstances involving this incident before the Physicians & Surgeons Policy was issued").

Accepting the Complaint's well-pled allegations as true, *ATSI Commc'ns*, 493 F.3d at 98, the Court finds that Plaintiff has waived its rescission claims based on information omitted from the Applications.  "It is well-settled that 'where upon the face of [an insurance] application, a question appears to be not answered at all, or to be imperfectly answered, and the insurers issue a policy without further inquiry, they waive the want or imperfection in the answer, and render the omission to answer more fully immaterial.'" *Philadelphia Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP*, 379 F. Supp. 2d 442, 453 (S.D.N.Y. 2005) (alteration in original) (citing *Phoenix Mut. Life Ins. Co. v. Raddin*, 120 U.S. 183 (1887)) (additional citations omitted); *see also MIC Gen. Ins. Corp. v. Qadri*, No. 21-cv-640, 2023 WL 2667043, at * 5 (E.D.N.Y. Mar. 28, 2023) ("An insured can argue that the insurer waived any ability to deny coverage *only* [when] the insurer relies on the existence of the omission to deny coverage.") (emphasis in original).

As detailed above, *see* Section II.D, *supra*, for each of the Applications, Section I requested "General Applicant Information;" Section II contained 13 questions relating to "Claims Information;" and Section III provided for verification and signature.  The entire form is little more than a page long.  The brief instructions within Section II state "[f]or any "yes" responses, please

attach a separate explanation." Dkt. Nos. 1-2, 1-3.

On its Application, Defendant Practice responded "yes" to 12 of the 13 questions in Section II.  Dkt. No. 1-2 at 2.  Those responses indicated, *inter alia*, the existence of 44 malpractice claims or suits; severe adverse patient outcomes, including "post-procedural complications . . . resulting in death, paralysis, loss of body part bodily function, disability," "death (expected or otherwise) . . . brain damage, permanent paralysis;" and numerous other patient care issues.  *Id.*  As far as the "separate explanation" requested for each of its 12 "yes" responses, Defendant Practice instead included a seven-sentence summary indicating that its "providers see over 190,000 patients per year and often treat complex cases and patients with multiple comorbidities." *Id.* at 3.

On their Applications, Defendant Providers each responded "yes" to 11 of the 13 questions in Section II.  Dkt. No. 1-3 at 2, 4.  Their responses also indicated, *inter alia*, the existence of severe adverse patient outcomes, including "post-procedural complications . . . resulting in death, paralysis, loss of body part bodily function, disability," "death (expected or otherwise) . . . brain damage, permanent paralysis," and numerous other patient care issues.  *Id.*  Neither Defendant Provider included the requested "separate explanation" for each of their 11 "yes" responses.  Dkt. No. 1-3.

In sum, then, the three Applications from Defendant Practice and Defendant Providers contain "yes" responses to 34 of the possible 39 questions in Section II, indicating a wide-range of serious issues.  Two of the Applications included no explanation for these responses at all; the third Application offered a seven-sentence summary.  Yet the Complaint does not allege that Plaintiff requested any of the missing explanations or conducted any investigation in connection with the incomplete responses provided.  *See generally* Dkt. No. 1; *see also Axis Reinsurance Co. v. Bennett*, Nos. 07-cv-7924, 2008 WL 2485388, at *11–12 (S.D.N.Y. June 19, 2008) (finding that

insured's failure to challenge omission of information from insurance application "constituted a waiver of any objection to coverage based upon" the insured's omission); 44A Am. Jur. 2d Insurance § 1559 ("An insurer's issuance of a policy in the face of what appears to be a lack of sufficient information to allow the insurer to determine its risks, therefore . . . waives the insurer's right to [ ] cite that lack of information as a ground for avoiding coverage.").

Accordingly, this portion of the Motion is granted.  *See Pellegrino v. N.Y. State United Tchrs.*, 843 F. App'x 409, 410 (2d Cir. 2021) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.") (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)).

### 2.  Estoppel[19]

State Court Defendants also argue that Plaintiff's declaratory judgment claims seeking to rescind the Policies (Counts Two and Three) are subject to estoppel, in part because Plaintiff collected substantial premiums.  Dkt. No. 25-1 at 12–13, 15–23; Dkt. No. 35 at 10–12.  In opposition, Plaintiff argues that estoppel is an affirmative defense and not an appropriate basis for dismissal and, even if considered, estoppel would not bar the allegations in the Complaint.  Dkt. No. 33 at 20–25.

Plaintiff's argument that State Court Defendants cannot raise an affirmative defense at the motion to dismiss stage fails as a matter of law.  *See, e.g., Pellegrino*, 843 F. App'x at 410.  And here, Plaintiff's well-pled allegations establish that it is estopped from seeking rescission of the Policies.  In general, estoppel "arises where an insurer acts in a manner inconsistent with a lack of

---

[19] "[W]aiver and estoppel are distinct in New York insurance law."  *Rapid Park Indus. v. Great Northern Ins. Co.*, 502 F. App'x 40, 42 n.1 (2d Cir. 2012) (quoting *Burt Rigid Box, Inc. v. Travelers Property Cas. Corp.*, 302 F.3d 83, 95 (2d Cir. 2002)).

coverage, and the insured reasonably relies on those actions to its detriment." *Burt Rigid*, 302 F.3d at 95 (citation omitted).  As the Second Circuit has acknowledged, "[i]t is well settled that the continued acceptance of premiums by the carrier after learning of facts which allow for rescission of the policy [ ] constitutes . . . an estoppel against [ ] the right to rescind." *Fid. & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp.*, 540 F.3d 133, 144–45 (2d Cir. 2008) (citations omitted) (quoting *Scalia v. Equitable Life Assurance Soc'y*, 673 N.Y.S.2d 730, 731 (App. Div. 1998)).

The policy documents attached to the Complaint indicate that premiums for the Policies exceeded $500,000 and were paid quarterly.[20]  Dkt. No. 1-4 at 3, 104, 120.  The Policies further provide that: "[a]ny premium not paid on or before its due date will be in default.  If premium is in default, this policy will be canceled."  *Id.* at 104, 120.  The Complaint alleges that Plaintiff learned of the adverse outcome giving rise to the Underlying Action on April 17, 2023.  Dkt. No. 1 at ¶ 1, 39, 82, 84.

The Complaint does not allege that any of the premiums during the October 1, 2022 to October 1, 2023 effective dates of the Policies is (or were) unpaid, nor does Plaintiff seek a declaratory judgment canceling the Policies on the basis of premium non-payment.  *See generally* Dkt. No. 1.  In fact, the reservation of rights letters cited by Plaintiff, Dkt. No. 33 at 23, and referenced within the Complaint, Dkt. No. 1 at ¶¶ 66, 83, were issued shortly before the commencement of this action and state that "[i]n the event [either] Policy is rescinded, the premium amount paid will be refunded to you," Dkt. No. 25-4 at 12; Dkt. No. 25-5 at 13.  Thus, Plaintiff's allegations indicate the retention and "continued acceptance of premiums by the carrier after

---

[20] The Court notes that the two highest premium amounts listed within the Schedules of Insureds are for Defendant Providers.  Dkt. No. 1-4 at 6, 10.  That these amounts are significantly higher than the amount listed for any other physician suggests that Plaintiff was able to evaluate the risk of insuring Defendant Providers differently than the other 51 individuals listed on the Schedules of Insureds.  *Id.* at 6–17.

learning of facts which allow for rescission of the policy." *Scalia*, 673 N.Y.S. 2d at 731 (finding insurer's continued acceptance of premiums estopped it from pursuing rescission claim); *see also U.S. Life Ins. Co. in City of N.Y. v. Blumenfeld*, 938 N.Y.S. 2d 84, 86 (App. Div. 2012) ("An insurer's attempt to reserve its rights while accepting premiums is unenforceable for lack of mutuality. . . . This rule applies even where the insurer claims it accepted premiums after commencing a rescission action[.]") (citations omitted); *Sec. Mut. Life Ins. Co. of N.Y. v. Rodriguez*, 880 N.Y.S. 2d 619, 625 (App. Div. 2009) ("Plaintiff's acceptance of premiums from [insured] after learning of the alleged fraud allowing for cancellation of the policies constituted . . . an estoppel against [ ] its rights to cancel or rescind the policies.") (citations omitted) (collecting cases). Further, Plaintiff's acceptance and retention of the premiums while pursuing litigation against State Court Defendants to rescind the Policies prejudices State Court Defendants. *See Burt Rigid Box,* 302 F.3d at 95 ("[E]stoppel requires a showing of prejudice to the insured.") (citation omitted).

Because the face of the Complaint and its incorporated documents establish estoppel, this portion of the Motion is granted. *See Pani*, 152 F.3d at 74 (stating that an affirmative defense may be raised on a motion to dismiss, "if the defense appears on the face of the complaint.") (citations omitted).

### 3.  Ambiguity

The Motion further argues that because Question 3.k on the Applications is ambiguous, Plaintiff's rescission claims should be dismissed. Dkt. No. 25-1 at 19–22. Plaintiff counters that Question 3.k is unambiguous and the applicable standard of review requires denial of the Motion's arguments. Dkt. No. 33 at 18–20, 24–25.

"'[T]he initial interpretation of a contract is a matter of law for the court to decide,' as is

the 'threshold question' of '[w]hether a contract is ambiguous.'" *Fireman's Fund Ins. Co. v. OneBeacon Ins. Co.*, 49 F.4th 105, 112 (2d Cir. 2022) (alterations in original) (quoting *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006)).  An insurance contract "is ambiguous when its terms 'could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business." *Great Lakes Ins., S.E. v. Gray Grp. Invs., L.L.C.*, 76 F.4th 341, 347 (2d Cir. 2023) (quoting *Parks Real Est.*, 472 F.3d at 42)); *see also First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 118 (2d Cir. 1999) ("As this Court has recognized, '[b]ecause insurance contracts are inevitably drafted by insurance companies, New York law construes insurance contracts in favor of the insured and resolves all ambiguities against the insurer. . . . This [ ] rule applies to questions on insurance applications where the insurance company seeks to avoid liability by citing the answers thereto as misrepresentations.'") (alterations in original) (quoting *Vella v. Equitable Life Assurance Soc'y of U.S.*, 887 F.2d 388, 391–92 (2d Cir. 1989)).

The Court agrees with Plaintiff that State Court Defendants have not established that Question 3.k is ambiguous for purposes of a motion to dismiss.  As an initial matter, the primary case to which they cite is factually distinguishable.  *See Admiral Ins. Co. v. Brookwood Mgmt. #10, LLC*, No. 16-cv-0437, 2018 WL 5622595 (E.D.N.Y. Mar. 30, 2018).  The district court in that case found certain insurance application questions ambiguous, since the application sought insurance for a specific construction project, and a reasonably intelligent person in the applicant's position could have rationally understood certain questions to relate only to that specific project, instead of other projects.  *Id.* at *21.  Most significant, however, is that the current limited record

before the Court does not establish how a "reasonably intelligent person" "cognizant of the customs, practices, usages, and terminology as generally understood in" State Court Defendants' profession would view Question 3.k. *Great Lakes Ins.,* 76 F.4th at 347 (citation omitted). Accordingly, this portion of the Motion is denied.

#### 4.  Exclusion 3.O

Finally, State Court Defendants assert that Exclusion 3.O in Count Four is inapplicable because there was no "Claim" reported prior to the effective date of the Policies.  Dkt. No. 25-1 at 25–26; Dkt. No. 35 at 13–14.  Plaintiff argues that the Exclusion 3.O is broader than "Claim" and applicable.  Dkt. No. 33 at 27–28.

As detailed earlier, *see* Section II.E, *supra,* Exclusion 3.O in each Policy states that it "does NOT COVER **Damages**" "[a]rising out of a **Claim** made or brought against the **Insured** that the **Insured** knew or reasonably should have known about prior to the effective date of this policy." Dkt. No. 1-4 at 100, 115–16 (emphasis in original).  The Policies also state, in relevant part, that "**Damages** means all monetary sums which the [ ] **Insured** becomes legally obligated to pay as **Damages** as the result of a **Claim** or suit including judgments, awards and settlements entered into with the Company's prior written consent," and that "**Claim** means a written notice, demand, cross **Claim**, or lawsuit (including an arbitration proceeding), first reported to the Company during the **Policy Period** or any extended reporting period . . . , which alleges injury or death to a person arising out of a **Medical Incident**."  *Id.* at 105, 120–21 (emphasis in original).

Under New York law, "an insurance policy is a contract, and unambiguous provisions are given their plain and ordinary meaning," *Ezrasons*, 89 F.4th at 394–95 (citing *Univ. Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 25 N.Y.3d 675, 680 (2015)), and "an insurance contract is interpreted to give effect to the intent of the parties as express in the clear language of

the contract," *Fireman's Fund*, 49 F.4th at 112 (quoting *Morgan Stanley Grp. Inc., v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000)).  The clear language of Exclusion 3.O excludes Damages arising out of Claims made or brought against the Insured that the Insured knew or reasonably should have known about prior to the Policy's effective date.  And "[i]n the insurance context, New York courts have interpreted 'arising out of' to mean 'originating from, incident to, or having connection with.'"  *Napoli v. Nat'l Sur. Corp.*, No. 22-1516, 2023 WL 2320332, at *1 (2d Cir. Mar. 2, 2023) (summary order) (quoting *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 568 (2d Cir. 2011)).  Consistent with this definition, pursuant to the clear language of the Policies, and in light of common sense, a Claim must precede the Damages subject to exclusion under Exclusion 3.O.

The Complaint contains no allegation that a Claim relating to State Court Plaintiff was ever made or brought against State Court Defendants prior to the commencement of the Underlying Action in March 2023, let alone that such a Claim was made prior to the October 1, 2022 effective date of the Policies.  Dkt. No. 1 at ¶¶ 60, 65; *see generally* Dkt. No. 1.  Indeed, Plaintiff explicitly concedes in its papers that no such claim was made prior to the completion of the Applications on or about September 28, 2022.  *See* Dkt. No. 33 at 25 ("Defendants knew, months before the policies were issued, of Mr. Radko's tragic outcome.  [Question 3.k] asked about the prospective insureds' knowledge of 'circumstances.'  That no claim was made (the subject of question 2 in the application) does not justify making a clear misrepresentation on question 3.k.").

In the absence of any Claim, what the Complaint alleges instead is that Defendant Practice "had prior knowledge of facts and circumstances regarding Mr. Radko's adverse outcome months before the inception of the Entity Policy, and the Underlying Action arose from those facts and circumstances" and that Defendant Providers "had prior knowledge of facts and circumstances

regarding Mr. Radko's adverse outcome months before the inception of the Physicians & Surgeons Policy, and the Underlying Action arose from those facts and circumstances."  Dkt. No. 1 at ¶¶ 120–21.  The plain language of Exclusion 3.O, however, covers known or reasonably known Claims, not known or reasonably known "facts and circumstances" from which a Claim could arise.[21]

While characterized by Plaintiff as a "prior knowledge exclusion," Exclusion 3.O contains significantly narrower language than other prior knowledge provisions.[22]  Many such provisions appear to cover reasonably known "facts and circumstances" that could give rise to a claim, as is the case in the only two decisions cited by Plaintiff on this issue.  *See* Dkt. No. 33 at 28; *Liberty Ins. Underwriters, Inc. v. Corpina Piergrossi Overzat & Klar LLP*, 913 N.Y.S.2d 31, 32 (App. Div 2010) (interpreting prior knowledge provision that excluded coverage for "any claim arising out of a wrongful act occurring prior to the policy period *if . . . you had a reasonable basis* to believe that you had breached a professional duty, committed a wrongful act, violated a Disciplinary rule, engaged in professional misconduct, or *to foresee that a claim would be made against you*") (emphasis added); *see also Exec. Risk Indem. Inc. v. Pepper Hamilton LLP*, 13 N.Y.3d 313, 320 (2009) (construing Pennsylvania law and interpreting prior knowledge provision that excluded coverage for "any act, error, omission, circumstance or PERSONAL INJURY occurring prior to the effective date of this POLICY if any INSURED at the effective date *knew*

---

[21] The Court notes that Plaintiff's reservation of rights letters indicate that Plaintiff communicated with both Defendant Providers during the course of its initial investigation, but do not suggest that Defendant Providers had knowledge of any Claim.  Dkt. No. 25-4 at 4–5, 11; Dkt. No. 25-5 at 4–5, 12.

[22] The language of Exclusion 3.O is also significantly narrower than Question 3.k on the Applications, which reads: "all circumstances that might reasonably lead to a medical incident report, claim or suit (EVEN IF YOU BELIEVE THE POSSIBLE CLAIM OR SUIT WOULD BE WITHOUT MERIT)[.]"  Dkt. No. 1-2 at 2; Dkt. No. 1-3 at 2, 4 (emphasis in original).

*or could have reasonably foreseen that such act, error, omission, circumstance or PERSONAL INJURY might be the basis of a CLAIM*") (emphasis added).

Numerous other cases also address similar prior knowledge provisions with language quite different from Exclusion 3.O.  *See, e.g., North River Ins. Co. v. Leifer*, No. 22-1009, 2023 WL 2978970, at *1 (2d Cir. Apr. 18, 2023) (summary order) (affirming district court's interpretation of prior knowledge provision that excluded coverage of "claims based upon 'facts of circumstances of which [insured] had knowledge as of the effective date of [the Policy] and which could reasonably have been expected to give rise to a Claim'") (citation omitted); *Murphy v. Allied World Assur. Co. (U.S.), Inc.*, 370 F. App'x 193, 195 (2d Cir. 2010) (affirming district court's interpretation of prior knowledge provision in *XL Specialty Ins. Co. v. Agoglia*, No. 08-3821, 2009 WL 1227485, at *3 (S.D.N.Y. Apr. 30, 2009), which excluded coverage for "Loss in connection with any claim or claims made against the Insureds: (a) alleging, arising out of, based upon, in consequence of, or attributable to facts and circumstances *of which any Insured has knowledge as of inception . . .*") (emphasis in original); *Wallingford Grp., LLC v. Arch Ins. Co.*, No. 18-cv-00946, 2020 WL 4464629, at *6 (D. Conn. May 11, 2020) (interpreting prior knowledge provision which excluded coverage for "Damages or Claims Expenses resulting from any Claim: arising out of any fact or circumstance known to the Insured prior to the commencement of this Policy if such fact or circumstance could reasonably have been foreseen to give rise to a claim against the Insured") (applying Connecticut law); *Dupree v. Scottsdale Ins. Co.*, No. 653412, 2012 WL 2914174, at *3 (N.Y. Sup. Ct. June 28, 2012) (interpreting prior knowledge provision which excluded coverage for "any Loss under this Coverage Section on account of any Claim alleging, based on, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, any Wrongful Act, fact, circumstance or situation *which any of the Insureds had knowledge of*

*prior to the Continuity Date where such Insureds had reason to believe at the time that such known Wrongful Act could reasonably be expected to give rise to such Claim*") (emphasis in original); *Quanta Lines Ins. Co. v. Invs. Cap. Corp.*, No. 06-cv-4624, 2009 WL 4884096, at *2–3 (S.D.N.Y. Dec. 17, 2009) (interpreting prior knowledge provision which excluded coverage for "any Claim, demand, suit, proceeding or investigation of which any Insured had notice, pending on or prior to the inception date of the Policy Period . . . ; *or any fact, matter, circumstance, situation, transaction or event underlying or alleged in such demand, suit, proceeding, claim or investigation; regardless of the legal theory upon which such Claim is predicated*") (emphasis added).

Plaintiff fails to establish why the language in Exclusion 3.O should operate in the same manner as prior knowledge provisions with significantly broader language.  *See Dean v. Tower Ins. Co. of N.Y.*, 19 N.Y.3d 704, 708 (2012) ("[B]efore an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation.") (alteration in original) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (1984)).

The language of Exclusion 3.O is unambiguous and is triggered only by a Claim made or brought against State Court Defendants that they knew or reasonably should have known about prior to the effective date of the Policies.  *See Fireman's Fund*, 49 F.4th at 112 ("an insurance contract is interpreted to give effect to the intent of the parties as express in the clear language of the contract") (quoting *Morgan Stanley*, 225 F.3d at 275).  The Court agrees with State Court Defendants that the Complaint fails to allege any such Claim.  Accordingly, this portion of the

Motion is granted.[23]  *See Twombly*, 550 U.S. at 558 (dismissal appropriate "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief").

## V.      CONCLUSION

Accordingly, the Court hereby

**ORDERS** that, as to Plaintiff's duty to indemnify, Counts One, Two, Three, and Four are **DISMISSED without prejudice** for lack of subject matter jurisdiction; and the Court further

**ORDERS** that, as to Plaintiff's duty to defend, Count One is **DISMISSED without prejudice** for lack of subject matter jurisdiction and Counts Two, Three, and Four are **DISMISSED**; and the Court further

**ORDERS** that State Court Defendants' letter motion, Dkt. No. 43, is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 30, 2024
       Albany, New York

Anne M. Nardacci
U.S. District Judge

---

[23] To the extent Count Four is based on Exclusion 3.J, *see* Dkt. No. 1 at ¶¶ 64, 70, such a claim is not ripe because there has no determination of liability in the Underlying Action, *see* Section IV.A, *supra*, and thus there are no "Damages" that State Court Defendants are "legally obligated" to pay that could be subject to Exclusion 3.J, *see* Dkt. No. 1-4 at 99, 120.